| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
|---|---|
| JAMEL ROBINSON,<br><br>       Petitioner,<br><br>  – against –<br><br>P. HEATH,<br><br>       Respondent. | **MEMORANDUM & ORDER**<br><br>11-CV-03489 |

KORMAN, *J*.:

  I assume familiarity with the underlying history of this case. Briefly, petitioner was convicted of Murder in the Second Degree after a trial by jury, and was sentenced to a prison term of fifteen years to life. Petitioner, a minor at the time, and a co-defendant, who pled guilty to second-degree murder, acted together to attack a homeless man they discovered drunk and asleep in an abandoned car. Resp't's Br. to the Appellate Division 2, ECF No. 3-1 (Page ID #66). The petitioner and his co-defendant pursued the victim for several blocks to the front of a church. Trial Tr. 220, Apr. 7, 2005, ECF No. 4-2 (Page ID #557). There, they attacked the victim by throwing bricks at him while he lay on the ground. Trial Tr. 105-06, Apr. 6, 2005, ECF No. 4-1 (Page ID #442-43). The victim died due to the blunt impact of between fourteen and twenty-one blows to his head and chest. Trial Tr. 284, 295, Apr. 11, 2005, ECF No. 4-2 (Page ID #621, 632). In his written statement to the police, petitioner alleged that he was merely a detached observer of the attack, claiming that he threw only a "couple of bricks" and that none of them hit the victim. *Id.* at 220 (Page ID #557). The evidence, however, suggests otherwise.

  A priest, who witnessed the attack, testified at trial that two men, who matched the defendants' physical descriptions, were throwing bricks at a person lying on the ground. Trial

1

Tr. 105, Apr. 6, 2005, ECF No. 4-1 (Page ID #442). He could not say which man was throwing with more intensity. *Id.* at 144 (Page ID #481). Moreover, the blood stains found on petitioner's pants matched the DNA profile of the victim. Trial Tr., 262-64 Apr. 11, 2005, ECF No. 4-2 (Page ID #599-601). A forensics expert testified at trial that petitioner would have to have been positioned "very close" to the victim for the victim's blood to have splattered on his clothing. *Id.* at 293 (Page ID #630).

Petitioner seeks relief pursuant to 28 U.S.C. § 2254 on two grounds.

1. Petitioner challenges the denial of his motion to suppress the statement that he made to the police. Petitioner alleges that, as a minor, the statement he made to police should have been suppressed because "the prosecution failed to demonstrate that the police brought in an appropriate adult to be present during his interrogation." Pet. for a Writ of Habeas Corpus 7, ECF No. 1 (Page ID #7). On appeal, the Appellate Division held that "[t]he statement was obtained in compliance with [N.Y.] CPL 140.20(6) since the police immediately notified the [petitioner's] foster mother, the person legally responsible for his care, of his arrest and place of detention. The mandates of the Family Court Act regarding parental notification do not apply here because the defendant was arrested as a 'juvenile offender.'" *People v. Robinson*, 70 A.D.3d 728 (N.Y. App. Div. 2d Dep't 2010). Here, petitioner's claim fails because it involves purely a matter of New York State law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

2. Petitioner also asserts that the trial court erred in denying his request to appoint a DNA expert pursuant to N.Y. County Law § 722-c. During trial, petitioner sought to have a DNA expert appointed to re-test the blood stains on his pants. Trial Tr., 235-36 Apr. 7, 2005, ECF No. 4-2 (Page ID #572-73). A forensics expert from the Biology Lab of the Office of the Chief

2

Medical Examiner (OCME) testified that the blood on petitioner's pants matched the DNA profile of the victim. Trial Tr., 262-64 Apr. 11, 2005, ECF No. 4-2 (Page ID #599-601). On appeal, petitioner argued that the trial court's ruling constituted a violation of County Law § 722-c. Br. for Def.-Appellant 26, ECF No. 3-1 (Page ID #54). While his argument focused principally on the alleged violation of County Law § 722-c, petitioner's brief also invoked the argument that the trial court's ruling constituted a violation of his right to due process because "[d]ue process requires that the State fund appropriate expert services for the preparation of an indigent criminal defendant's case." Br. for Def.–Appellant 26, ECF No. 3-1 (Page ID #54). The Appellate Division held that, because petitioner "failed to demonstrate the necessity for the appointment of a DNA expert on his behalf pursuant to County Law § 722-c, the trial court providently exercised its discretion in denying the defendant's request to appoint and retain such an expert." *Robinson*, 70 A.D.3d at 728.

Petitioner's claim here fails for two reasons. First, to the extent that this claim involves a state court's application of state law, the claim is not cognizable. *McGuire*, 502 U.S. at 67-68. Thus, the Appellate Division's decision regarding County Law § 722-c may not be reviewed here. The Appellate Division did not, however, address petitioner's argument that the failure to grant his application for the appointment of a DNA expert violated the Due Process Clause. Specifically, he argued on appeal for the first time that "[d]ue process requires that the State fund appropriate expert services for the preparation of an indigent criminal defendant's case." Pet'r's Br. to the Appellate Division 26, ECF No. 3-1 (Page ID #54).

The failure of the Appellate Division to address the Due Process Clause claim raises a threshold question of the extent to which its holding is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that a reviewing federal court should presume that

3

the last reasoned decision of the state court adjudicated all raised claims on the merits and is entitled to AEDPA deference. *See* 28 U.S.C. § 2254. Subsequently, in *Johnson v. Williams,* 133 S.Ct. 1088 (2013), it held that one exception to this presumption was a case in which "a defendant claimed in state court that something that occurred at trial violated both a provision of the Federal Constitution and a related provision of state law" and where the state court, "in denying relief, made no reference to federal law." *Id.* at 1096. Nevertheless, even in this circumstance, *Johnson* acknowledged that the *Richter* presumption could hold "if the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard[.]" *Id.* This holding is consistent with the rule that the application of AEDPA deference "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).

The state law standard in the present context is at least as protective as the federal constitutional standard. The New York Court of Appeals has held that a "defendant always has the constitutional right 'to present a complete defense.'" *People v. Spencer*, 20 N.Y.3d 954, 956 (N.Y. 2012); *see also People v. Taylor*, 40 A.D.3d 782, 783-84 (N.Y. App. Div. 2d Dep't 2007) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense."). Moreover, the New York County Law § 722-c provides for the appointment of "investigative, expert, or other services" where they are necessary and where the defendant is financially unable to obtain them. N.Y. County Law § 722-c; *see also Tyson v. Keane*, 159 F.3d 732, 739 (2d Cir. 1998) (citing *People v. Jones*, 210 A.D.2d 904 (N.Y. App. Div. 4th Dep't 1994); *People v. Vale*, 133 A.D.2d 297 (N.Y. App. Div. 1st Dep't 1987)). Indeed, in *Ake v. Oklahoma*, upon which the petitioner relied in the Appellate Division, the Supreme Court cited

§ 722-c for the proposition that many states "currently make psychiatric assistance available to indigent defendants, and they have not found the financial burden so great as to preclude this assistance." 470 U.S. 68, 78 (1985). More specifically, *Ake* held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 74.

Nevertheless, there are a number of issues going beyond the precise holding in *Ake* that are the subject of conflicting lower court decisions that have not been resolved by the Supreme Court. *See* Wayne R. LaFave et al., *Criminal Procedure* § 11.2(e) 644 (3d ed. 2007). Among those issues are: "whether the *Ake* ruling is limited to capital cases," *Id.* at 645; the varying application of "*Ake*'s threshold requirement that the defendant make a preliminary showing that his mental condition at the time of the offense is 'likely to be a significant factor' at trial," *Id.* at 646; and whether the defendant is entitled to an "independent expert," *Id.* at 649, although LaFave et al. observe that "courts agree that such an expert can be a state employee from the public health service, provided the person is not part of the 'prosecution team.'" *Id.* at 650 n.175. Moreover, it is unclear whether the *Ake* holding applies to other experts beyond psychiatrists. *Id.* at 654.

While I am prepared to assume that the holding in *Ake* can reasonably be read as going beyond the appointment of a psychiatric expert and that it applies to a non-capital case, *see Tyson v. Keane*, 159 F.3d 732 (2d Cir. 1998), I am unable to conclude that the denial of the application for the appointment of an expert in this case constitutes an unreasonable application of *Ake*. First, the motion for the appointment of an expert was made orally and off the record prior to trial. *See* Trial Tr., 235-36 Apr. 7, 2005, ECF No. 4-2 (Page ID #572-73). As the trial judge observed during the course of trial, "Before the trial Mr. Pepe [petitioner's trial attorney]

5

approached me and asked me to sign an order appointing an expert in DNA testing." *Id.* Mr. Pepe explained during the trial that he had requested a DNA expert be "appointed for purposes of examining alleged blood stains on the defendant's trousers." *Id.* at 236 (Page ID #573).

There is, however, nothing in the record to indicate why there was any reason to believe the Office of the Chief Medical Examiner had wrongly concluded that the blood on petitioner's clothing matched that of the victim. More specifically, while petitioner states in the unsworn memorandum he submitted in support of his petition that "the probability was that [the blood] belonged to the petitioner," Notice Dated 11/15/11 from Jamel Robinson 8, ECF No. 6 (Page ID #751), the record does not reflect that such an argument was made to the trial judge. Nor was it made in petitioner's brief in the Appellate Division. Even here petitioner does not explain how that blood, assuming it was his, actually got on his pants. *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) ("Given that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision."); *see also Whittaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) ("It is well-settled that on federal collateral review, the petitioner bears the burden of proving that his constitutional rights were violated."); *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (same).

Further fleshing out the nature of the showing that a defendant must make, LaFave et al. observe:

> Where the expert is desired to contest evidence offered by the prosecution with the assistance of its forensic experts, the defendant ordinarily must offer some basis for believing that the state's scientific testimony could readily be challenged. As to some types of evidence, the very nature of the expert testimony suggests ground for challenge, as the scientific field is one filled with controversy and disputes over methodology. Where, however, the scientific methodology is well established and its application is viewed as largely mechanical (as is true of typical fingerprint analysis), the defense often must show specific reason (e.g., the prosecution expert's bias or incompetence) for concluding that a

> defense expert might assist in a successful challenge to the prosecution's evidence.

LaFave et al., *Criminal Procedure* § 11(e) at 656-57. The expert testimony in this case is of the kind that requires the showing suggested above. As the Supreme Court of Indiana observed:

> Psychiatry is an extremely uncertain field dealing with the mysteries of the human mind where expert opinions can be expected to and do differ widely. In contrast, the neutral [DNA] experts here were testifying to the results of a test "involving precise, physical measurements and chemical testing." Under these circumstances, the trial court did not abuse its discretion by denying appointment of defendant's requested expert.

*Harrison v. State*, 644 N.E.2d 1243, 1253 (Ind. 1995) (internal citation omitted). Similarly, my colleague Judge Gleeson observed that "[t]he results of modern DNA testing are of essentially unimpeachable reliability. . . . . While laboratory error can never be wholly eliminated, samples can be retested if there is any real doubt about test results. In all, unlike previous methods of DNA testing, modern STR analysis (known as PCR-STR testing due to its use of polymerase chain reaction to multiply the sample DNA and enable testing of smaller samples of biological material) provides identification evidence of essentially unimpeachable reliability." *McKithen v. Brown*, 565 F. Supp. 2d 440, 481-82 (E.D.N.Y. 2008) *rev'd on other grounds*, 626 F.3d 143 (2d Cir. 2010). The modern STR analysis to which Judge Gleeson referred was the kind performed here. *See* Trial Tr. 245, 252, Apr. 11, 2005, ECF No. 4-2 (Page ID #582, 589).

Finally, the DNA test that was admitted in this case was conducted by what can fairly be described as "an employee from the public health sector [who] is not a part of the prosecution team." LaFave et al., *Criminal Procedure* § 11(e) at 650 n.175. OCME's mandate is "to provide an impartial determination of the cause of death." *People v. Washington*, 86 N.Y.2d 189, 192-93 (N.Y. 1995). Indeed, OCME "ha[s] no authority to gather evidence with an eye toward prosecuting a perpetrator." *Id*. OCME concluded that there was only a one in one trillion chance that the blood on petitioner's pants belonged to someone other than the victim. Trial Tr., 262-64

Apr. 11, 2005, ECF No. 4-2 (Page ID #599-601). This conclusion was corroborated by the eyewitness testimony and the admission of the petitioner in his confession that he was actually involved in throwing bricks, although he claimed that none of them hit the victim. Trial Tr., 220 Apr. 7, 2005, ECF No. 4-1 (Page ID #557). Under these circumstances and again in the absence of any reason offered by the petitioner to believe that the probability was that the blood on his pants came from him rather than the victim, I am unable to say that the denial of the application for a second DNA expert involved an unreasonable application of the Supreme Court's holding in *Ake v. Oklahoma*.

I add these brief words in conclusion. *Ake* did not clearly hold, at least outside the context of psychiatric testimony, that a defendant is entitled to a second expert. *See Miller v. Colson*, 694 F. 3d 691, 695-99 (6th Cir. 2012). As Judge Julia Smith Gibbons concluded her discussion in *Miller*:

> The limited inquiry by the *Ake* Court, the subsequent circuit split that developed in the wake of *Ake*, the Supreme Court's decision not to resolve the circuit split, and our own conflicted jurisprudence about the constitutional right to independent psychiatric assistance all guide us to one inevitable conclusion: even if *Ake* were relevant, *Ake* did not represent 'clearly established federal law' requiring the provision of independent, non-neutral psychiatric assistance.

*Id.* at 699.

## CONCLUSION

Because the holding of the Appellate Division did not involve an unreasonable application of clearly established Supreme Court law, *see Harrington v. Richter*, 562 U.S. 86 (2011), the petition for a writ of habeas corpus is denied. I also decline to issue a certificate of appealability.

**SO ORDERED.**

Brooklyn, New York
October 2, 2014

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge